# William Little, Administrator of George S. Barker, deceased, *v.* A. C. Fairchild and George Grace, Appellants.

*Amendment—Practice, C. P.—Demurrer to amended statement.*

Where an amendment, within the power of the court to allow, which did not change the cause of action although broad enough to permit the introduction of proof on the trial which might otherwise have been excluded is made, the better practice is to demur to such amended statement if it be objectionable; when the cause goes to trial on the amended statement the defect in the pleading if any is cured.

*Charge of court—Accidental and immaterial error.*

Where the liability sought to be imposed upon two members of a firm served by process was not individual but one growing out of a partnership

of which they were members, the appellate court will not reverse for an accidental misstatement of the trial judge that the issue was one between the plaintiffs and four members, naming them, constituting the defendant firm.

*Partnership—Evidence—Authority of partner to bind partnership.*

In a suit against a firm, of which only two members were served and where the mouths of the immediate parties are closed by the death of the plaintiff, evidence of admissions of the firm's liability, made by the members thereof who were not served, is admissible to charge the members of the partnership who were served with a debt contracted on behalf of said partnership by any of the partners in the ordinary course of business.

*Evidence—Memorandum of sale—Admission of indebtedness.*

A written memorandum of sale although not a book entry is admissible as evidence of an admission of indebtedness when identified and explained by adequate parol testimony.

Argued Jan. 17, 1899.     Appeal, No. 17, Jan. T., 1899, by defendants, from judgment of C. P. Bradford Co., Dec. T., 1893, No. 172, on verdict for plaintiff.     Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ.     Affirmed.     Opinion by W. W. PORTER, J.

Assumpsit.     Before DUNHAM, P. J., of the 44th judicial district, specially presiding.

It appears from the record that this was an action of assumpsit brought by George S. Barker on September 29, 1893, to recover for certain onions sold to the firm of Fairchild, Grace & Co.     The firm consisted of several partners, to wit: A. C. Fairchild, V. W. Grace, George Grace and S. G. Dye.     Service was had upon A. C. Fairchild and George Grace.     Judgment was originally entered for want of a sufficient affidavit of defense and appeal was taken to the Supreme Court where the judgment was reversed (see Barker v. Fairchild, 168 Pa. 246).     After the return of the record George S. Barker having died, his death was suggested and William Little, administrator, was substituted as plaintiff.     Subsequently said administrator obtained leave and amended the statement of claim filed as follows: [Now, February 2, 1897, the plaintiff is permitted to amend his statement of claim in the above case by adding after the words, " on the 31st day of October, A. D. 1891," the words, " or within six years before bringing this suit."] [1]

It appears from the evidence that answers to interrogatories,

taken by depositions under commission, by Andrew Wilson, John T. McEntire and George S. Barker, were permitted to be read to the jury under objection of defendants' counsel, these answers tending to show a sale of the onions, the price of which was sued for, to the firm of which defendants were members and the admission of these answers were the subject of exceptions two to eight inclusive.

The following interrogatories and answers are specifically set out:

[4. Did you know George S. Barker in his lifetime, and do you know of his having business transactions with said firm, and how did you acquire such knowledge? *Answer:* I knew George S. Barker in his lifetime, and knew of his having business with said defendant firm. I was with him about the first week in October, 1891, when he sold to said firm something over 20,000 pounds of onions. I was also present with both said George S. Barker and members of said firm after the delivery of the onions, on several occasions, when they acknowledged having received said lot of onions, and that they had not paid for them.] [2]

[6. Do you know of George S. Barker having from said defendant any paper or writing, showing the purchase by them from him of any onions; and did you see any member of said firm make said writing or any part thereof, and what part? *Answer:* I know said George S. Barker had from said defendant firm a paper showing in writing the purchase by them from him of about $190 worth of onions. I was present when said George S. Barker had Mr. W. Grace " O. K." the same; also when Mr. S. G. Dye wrote the word "correct" followed by his initials upon it.] [3]

[7. Can you identify said paper now, and is this paper now shown you, and marked exhibit "A., M. L. J.," the one you refer to? If so, have the commissioner attach same to your depositions. *Answer:* The paper shown me by the commissioner, marked exhibit "A., M. L. J.," is exactly like the one I saw in said George S. Barker's possession, being the one on which I saw S. G. Dye write the word "correct" and his initials. The word "correct" and said initials on the paper now shown me is in Samuel G. Dye's handwriting, and the rest appears to be in the handwriting of V. W. Grace, and I believe I can safely

say that this is the identical paper which said George S. Barker received from said firm; being fully satisfied of that fact, I hand said paper to the commissioner to be attached to this deposition.] [4]

[8. Do you know or can you set forth any other matter or thing which may be of benefit or advantage to the parties at issue in this case, or either of them, or that may be material to the subject of this your examination, or the matter in question in this cause? If so, set forth the same fully and at large in your answer. *Answer:* I can only say that I heard both V. W. Grace and S. G. Dye repeatedly admit the indebtedness sued on in this case. They also told said George S. Barker and myself on several occasions that the same was an honest debt, and that Mr. A. C. Fairchild of Towanda, Pa., was a member of said firm, and was amply good for it.] [5]

The court admitted in evidence, under objection of defendant, the paper marked " Exhibit A," which is as follows:

["G. S. Barker:

"23,908 pounds Onions @ 80, $189.65.

    "10—31—S. G. D.          This is O. K.

                          "V. W. G.

"Correct.

    "S. G. D."] [6]

The court admitted in evidence the answer of John T. McEntire to the sixth interrogatory as follows:

6. Are you familiar with the handwriting of any of said firm; and if so, in whose handwriting is said paper, or any parts thereof? *Answer:* Yes, I am familiar with the handwriting of V. W. Grace. All of the handwriting on the slip now shown me by the commissioner, marked exhibit " A., M. L. J.," is in V. W. Grace's handwriting, except the words " Correct, S. G. D." at the end thereof.] [8]

The court charged the jury, inter alia, as follows:

[The case you have been sworn to try is that of William Little, administrator of the estate of George S. Barker against A. C. Fairchild, V. W. Grace, George Grace and S. G. Dye, late partners trading as Fairchild, Grace & Co.] [9] . . . .

[On the part of the plaintiffs they claim that in the month of

October or, as it was placed in their first statement, on the 31st day of October, 1891, they delivered to the defendants 23,908 pounds of onions, at the price of eighty cents a hundred. In support of their claim they have introduced the evidence of three different persons, one of whom testifies that he saw Mr. Barker in his lifetime deliver to the defendants over 20,000 pounds of onions.] [10]  . . . .

[There is another witness, however, who testifies that he was present when members of the firm of Fairchild, Grace & Co., delivered to Mr. Barker, the original plaintiff in the case, a memorandum of onions that the firm had bought of Mr. Barker, and they have attached to the deposition a memorandum which he swears, in his opinion, is the memorandum that he saw delivered to Mr. Barker by Mr. Grace and by Mr. Dye.  . . . And he swears that he believes that to be the paper that was given by these defendants to Mr. Barker as a statement of the onions that they had bought.] [11]

Verdict and judgment for plaintiff for $250.72. Defendants appealed.

*Errors assigned* among others were (1) in allowing amendment to plaintiff's statement, reciting same.  (2–5, 8) In admitting answers to interrogatories to be read in evidence, reciting same.  (7) In admitting in evidence paper marked exhibit "A," reciting same.  (9–11) To portions of the judge's charge, reciting same.  (12) Refusing binding instructions for defendants.

*Rodney A. Mercur*, for appellants.—This action in assumpsit is and was brought to recover an alleged debt founded on a book account, and the plaintiff particularly specified the date of the said account, to wit: "October 31, 1891."

Justice FELL in rendering the opinion in Barker v. Fairchild, 168 Pa. 246, says, "If the sale was on some other date the defendants were not liable under the statement filed. At a trial no recovery could be had against them without an amendment."

The act of 1887 requires "a concise statement" and the act of 1806 requires "a statement of . . . . demand . . . . particularly specifying the date of the . . . . book account," etc.

Can it be said that a statement of claim to recover for goods sold and delivered where the date is uncertain and is particu-

larly declared to be in the alternative, is "a concise statement?" Fortunately our appellate courts have declared repeatedly that a statement must exhibit a complete cause of action, in such clear, express and unequivocal language, that if the material averments are not denied by the defendant, a judgment in default may be entered and liquidated.

So it was declared in Byrne v. Hayden, 124 Pa. 170. The next case in point of time is Fritz v. Hathaway, 135 Pa. 274. Both of these cases were followed in Newbold v. Pennock, 154 Pa. 591, and Winkleblake v. Van Dyke, 161 Pa. 5. Then follows the case of Bank v. Ellis, 161 Pa. 241.

Fritz v. Hathaway, supra, was followed in Murphy v. Taylor, 173 Pa. 317; Bank v. Ellis, supra, was followed in Peale v. Addicks, 174 Pa. 543; and both the Byrne and Ellis cases were followed in the recent one of Acme Mfg. Co. v. Reed, 181 Pa. 382. This court has expressly followed Fritz v. Hathaway, supra, in several cases, and among them, Hutton v. McLaughlin, 1 Pa. Superior Ct. 642, and both are followed in Close v. Hancock, 3 Pa. Superior Ct. 207, Byrne v. Hayden, supra, in Clements v. Dempsey, 7 Pa. Superior Ct. 52, Bank v. Ellis, supra, in Louchheim v. Maguire, 6 Pa. Superior Ct. 635, and in the recent case of Clark v. Lindsay, 7 Pa. Superior Ct. 43.

The plaintiff does not recover on the proofs alone; he recovers secundum allegata et probata.

In a long line of cases, commencing with Farmers' & Mechanics' Bank v. Israel, 6 S. & R. 293, where it was held "the court will not permit a declaration to be amended by the introduction of a new, and entirely different, cause of action from that originally set forth."

The learned court erroneously charged the jury (ninth assignment) that the case they were sworn to try was "against A. C. Fairchild, V. W. Grace, George Grace and S. G. Dye, late partners trading as Fairchild, Grace & Co." This was not the fact, as the only defendants the jury were sworn to try the case against were A. C. Fairchild and George Grace. No appearance was ever entered for any one else. No other defendants ever filed pleas. No verdict nor judgment was ever rendered or entered against any others.

This same error permeated the entire case, and the learned court admitted certain answers to interrogatories as competent

testimony, and charged the jury as if all the defendants were actually parties defendant and on trial.

The mistaken theory upon which this case was tried, was the apparent belief that all that was necessary to be shown was a cause of action. It was immaterial whether it was the one laid in the declaration or not: Clark v. Lindsay, 7 Pa. Superior Ct. 43.

It is impossible to tell from all the testimony offered upon the trial of this case whether exhibit " A " was offered to prove the entries in plaintiff's books, or as a written admission of indebtedness and consequent liability on the part of the defendants.

Exhibit " A " is not a book entry. It is not in the handwriting of the plaintiff nor of any one in his employ. The evidence shows it is all in the handwriting of V. W. Grace and S. G. Dye, and not of A. C. Fairchild or George Grace or either of them.

If exhibit " A " was offered to prove the book account upon which plaintiff declared, then we contend the allegata and probata do not agree, because the alleged copy of the book entry mentioned in plaintiff's statement, is not exhibit " A," as plainly appears by comparison.

The plaintiff now has a judgment based on a right of action not set forth in his statement (a verdict recovered for goods sold and delivered upon alleged "book entries" which do not exist), and therefore extends beyond it, which is directly contrary to all precedents. This doctrine is expressly recognized by this court in the recent case of Sullivan County v. Middendorf, 7 Pa. Superior Ct. 71, where several authorities are cited.

*S. W. Little*, with him *Wm. Little*, for appellee.—We clearly had the right with permission of the court to file an entirely new declaration, even to have entirely changed the form of action. Why is that right given us by statute? In the language of the act, so that no "plaintiff shall be nonsuited by reason of any informality in any statement or declaration."

But beyond the authority given by our statute to grant amendments, every court has a common-law right to grant amendments. Mr. Justice SHARSWOOD in Penna. & N. Y. R. R. Co. v. Bunnell, 81 Pa. 414, says: " The idea that all amendments

must depend upon statute is essentially erroneous. Every court of record has at common law a power of amendment," etc.

OPINION BY WILLIAM W. PORTER, J., March 23, 1899:

The amendment made of the statement of claim by the permission of the court was certainly broad. It permitted the introduction of proof on the trial which might otherwise have been excluded. The question, however, arises whether advantage can now be taken of the character of the amended statement. The allowance of it was within the power of the court below. The right to amend was with the plaintiff. The amendment did not change the cause of action. The leave given to amend is not such a final order as may be separately appealed from. Nor was attempt made to appeal. The action of the court was excepted to, but was not made the subject of alleged error in this court until the review of a trial held more than six months after amendment made. The form of the amended pleading might have been attacked by demurrer, but no demurrer was filed. The cause went to trial on the statement as amended. This cured the defect in the pleading, if defect existed. We, therefore, do not sustain the first assignment of error.

This action was originally brought against the firm of Fairchild, Grace & Co., but service of the writ was had only on A. C. Fairchild and George Grace. The trial judge said to the jury that they were sworn to try a case "against A. C. Fairchild, V. W. Grace, George Grace and S. G. Dye, late partners, trading as Fairchild, Grace & Co." Strictly this was not the fact, since but two of the defendants had been served. But the liability sought to be imposed upon the two defendants was not individual, but growing out of the partnership of which they were members. We do not think any injury was suffered by the defendants by reason of the accidental misstatement of the trial judge. It is therefore not an error for which we can reverse. This disposes of the ninth assignment.

In view of what has been said in regard to the amended statement and the form of action in which the defendants are sought to be charged, we are of opinion that the second and seventh assignments cannot be sustained. The mouths of the immediate parties to the litigation having been sealed by the death of the plaintiff, the evidence supplied by the depositions

was admissible to charge the members of the partnership with a debt contracted on behalf of the partnership by any of the partners in the ordinary course of business.

The remaining assignments (save the tenth and twelfth) relate to the admission in evidence of a memorandum which was given to Barker in the following form: ·

" G. S. Barker:

" 23,908 pounds Onions @ 80, $189.65.

  " 10—31—S. G. D.  This is O. K.

" Correct      " V. W. G.

  " S. G. D."

This was not a book entry. The character of the document is clear when the initials thereon are explained by testimony to be those of two of the partners of the defendant firm. It was in the nature of an admission of indebtedness, and was properly admitted.

The statement made by the trial judge (the subject of the tenth assignment) is supported by the testimony. The witness, Wilson, testified that he was with Barker " about the first week in October, 1891, when he sold to said firm something over 20,000 pounds of onions. I was also present with both George S. Barker and members of the said firm after the delivery of the onions, and on several occasions when they acknowledged having received said lot of onions, and that they had not paid for them." The tenth assignment is dismissed.

The learned counsel for the appellants has presented his case with earnestness and ability, but he has not convinced us that any reversible error has been committed by the court below.

The judgment is, therefore, affirmed.

April 17, 1899. Motion for a reargument refused.